May it please the court. Good afternoon, your honors. Jay Nelson on behalf of John Geringer. I'll do my best to watch my own clock. I'll try to reserve two minutes for rebuttal. With the time I have today, I'd like to briefly address the government's request for dismissal and dive into the merits of our claim regarding the value of the growth fund. And if I have any time left, I'll squeeze in whatever I can. On the appellate waiver issue, I think this case calls out for a straightforward application of Buchanan and Felix. The district court told Mr. Geringer he could appeal. Mr. Geringer acknowledged what the court said, that he understood, and the government stood silent. Didn't say anything, didn't object. Counsel, I understand that argument and I understand the case law here. Why don't we skip to, I have a question on the standard of abuse discretion and what standard you think should be applied on the issue of calculating the sentencing, the appropriate sentencing in this case. Well, I think with respect to the calculation methodology, that's a de novo standard. So whether the district court correctly held a rule that's essentially as a matter of law that the value of the growth fund was irrelevant, that's a methodology question and that's a de novo review, Your Honor. Does that answer your question? It does. Counsel, isn't what the judge indicated really an analysis of a, made a factual determination as to the value of this particular property and, therefore, because it was a factual determination, isn't it an evaluation of, for an abuse of discretion? First of all, no. I disagree that the judge made a factual finding that the fund was worthless. I think the government is advocating that position now. I don't understand anybody, any parties below to have actually advocated that position and I think the reason, and if the district court did make that finding, it is clearly erroneous or an abuse of discretion. It would satisfy any standard and the reason is at the time the offense was discovered, the growth fund had $700,000 in cash and 67% ownership interest in DDNI. Those assets were so substantial that the district court appointed a special master to manage and preserve them. The special master then filed tax returns for 2012 and 2013, reporting almost $50 million in assets to the taxing authorities. Those numbers found further support in an independent patent valuation that was conducted by an independent appraiser who found that one of DDNI's patents alone had a licensing value ranging from $30 to $77 million, with the lower end of the range less likely. The limited partners themselves found great value in the fund because they organized a steering committee to manage and participate in the management of the fund. That steering committee has now morphed into a corporation which has assumed management of the growth fund and is actively managing it to this very day. The special master himself, because of the size of the investment in DDNI, he got a seat on DDNI's board. The limited partners themselves and other third parties have continued to invest in DDNI and so if the fund is worthless, this is all much ado about nothing and I think that no rational actors, including the district court, the special master, the limited partners, DDNI's cooperation in all of this, would do any of that for something that's worthless. So if the district court made that finding, which I don't think it did, it would be error under any standard, Your Honor. Well, but it's looking at it at the time of the fraud was committed and that is not at the time of sentencing, though at the time of the fraud was committed and wasn't this an illiquid investment. So how is the judge going to assign a value to that? Well, I think the guidelines and the case law don't dictate a point in time where you measure the value. Typically what's done is either you assess it at the time the offense is discovered, which in this case has always been treated as the time of the government's raid into the fund's offices. Sometimes the courts will apply, will assess the value of the asset at the time of sentencing and that's a judgment call that's up to the district court and then it gets reviewed by Your Honors. But so I don't think it's at the time of the offense because the time period of this offense was roughly from 2004 to the raid in 2012. So what the fund's assets were at any given point in time in that broad range is, you know, it widely varies. So it's either at the time of discovery, which was 2012, or the time of sentencing, which was 2015. And because the district court denied an evaluation of DD&I in 2015, the record is a little bit less clear about what the value of the fund would have been in 2015. But, of course, on any remand the district court would sort that out by taking evidence and testimony from both sides. If the fund has value, assuming the fund has value, the question is, and Your Honor was hinting at this, is the liquidity issue. Does the district court probably rule as a matter of law that it's irrelevant, regardless of how much money might have been in the fund? The answer is no. The district court was absolutely incorrect. And it stems from all the cases we've cited in our brief and a straightforward application of 2B1.1. And I think rather than rehearse all the cases I've cited, I'd like to offer the court a brief analogy. If you have, say, a niece, and she doesn't have a car. She and her husband both need cars to get to the office. They don't have time to buy their own car, so they go to Uncle. And they say, Uncle, we're going to give you $100,000. And we'll pay you a small fee. Would you please help us buy us two BMWs? We each want a BMW so we can drive to work. Uncle says, sure. He pockets the commission and he takes the $100,000, but he knows this whole time he's never going to buy the two BMWs. He's going to buy him a Rolls Royce, a vintage Rolls Royce, because he thinks it's a better investment. He thinks he's doing him a favor. But it's not a favor because they still need to get to work. So the niece is furious. She says, what am I going to do with this vintage Rolls Royce? I can't sell this thing. I don't know anything about the market for vintage luxury cars. I can't drive it to work. It's barely street legal. My husband still doesn't have a car because he only bought us one Rolls Royce. So say this uncle gets prosecuted and he appears for sentencing. Is it accurate to say that the niece and her husband have acquired nothing from this? Did they lost the entire $100,000? I hope the common sense answer is no. They have a vintage Rolls Royce. Maybe it's hard to sell. Maybe they can't just take it down to the used car lot and sell it. Maybe it's a different market than the market for a 2016 BMW. But it's still an asset that has value. And you can find a seller somewhere or you can appraise it. And to ignore the fact that to give the uncle a fair sentencing in that situation, you have to account for the fact that they haven't lost the entire $100,000. So if an investor wanted in 2012 to go in and get their asset back, their funds that they invested, their millions of dollars, you're telling me that they could have done that? Well, as the case was approaching sentencing, I believe Didi and I was actually on the market. So there is a market. This is Silicon Valley. Companies, this is the Silicon Valley model. You found a startup. You develop your intellectual property. You build it up. You build a name for yourself. You build a book of business, and then you try to sell yourself off. So to say that here on the Ninth Circuit in Silicon Valley that private equity investments, venture capital is worthless until the day it gets sold to somebody, I don't think that's true. But in any event, the district court could have taken evidence on it, and the government could have had a venture capital expert come in and say, yeah, we consider all of our investments worthless until the day they get sold. And then Mr. Garinger could have an expert come in and say, that's not how we treat our investments. We think they're valuable assets. And the district court could decide based on a full developed record that this court could review. But that's not what happened because the district court ruled out of hand it's irrelevant as a matter of law, no matter how much is in there. And don't forget, please, Your Honors, there's $700,000 in cash, which the district court ignored too. So even if the court credits illiquidity, we're still – nobody ever addressed the fact that there's $700,000 in cash at the time the offense was discovered. And if I could, I'd like to reserve the rest of my time, Your Honors. Thank you. Thank you. May it please the Court. My name is Meredith Osborne, and I represent the United States in this appeal. There are three issues before this Court, the enforceability of the appellate waiver, the district court's loss calculation, and the legality of the restitution and forfeiture orders. First, this Court should dismiss this appeal because Geringer unambiguously waived his right to appeal in his plea agreement. And the district court did not revive its right – his right when it referred him back to the plea agreement for his appellate rights at sentencing. Quite to the contrary of this being a straightforward application of Buchanan and Felix, this is a straightforward application of Arias Espinoza and Lopez-Armenta. If you look at the words that were used in those cases, in Buchanan, the district court said, you have the right to appeal findings which I make today regarding sentencing. That was unambiguous, you have a right to appeal, and specific about what the right to appeal was. In Felix, the defendant's counsel said, I believe he would be allowed to appeal the sentence. And then the district court said, all right, and then later said, asked, are the appeal rights waived for except, I guess, the issue of criminal history category. Again, unambiguous, specific language regarding the right to appeal. By contrast, the statements that were made by the district court in this case are very similar to the statements that were made in Arias Espinoza, where the district court told Arias Espinoza that he may have the right to appeal, and in Lopez-Armenta, where the district court also told the defendant, you have the right to appeal because the defendant pled guilty without the benefit of the plea agreement to preserve his right to appeal the court's determination on the suppression hearing. In those two cases, this Court has held that that language, which was ambiguous about the right to appeal, did not revive the defendant's appellate rights when those were waived. To the extent that Geringer now points this Court to the plea agreement and argues that the plea agreement is ambiguous because certain terms were left to the district court, respectfully, that argument doesn't hold water. First of all, if Geringer's plea agreement was ambiguous, then Geringer would be asked to be released from it because it wasn't knowing and voluntary. And clearly, he still wants to get all the benefits that he accrued from the plea agreement, and he's not asking to be put back in the pre-plea stage. And second, Geringer was advised by his counsel prior to entering in the plea agreement, and so he can't attribute any confusion about the extent of his appellate rights to his being a layperson. If the Court has no questions on the appellate waiver, I'll move on to the loss calculation. The district court, I want to talk first because, Your Honor, you raised the question of the standard review on sentencing, and I would argue that this, the district court's loss calculation was a factual determination, which this Court should review for abusive discretion or clear error. The very facts that Geringer just, counsel just pointed to show that this was a factual determination, whether or not the fund had any value to the investors at the time of sentencing. But what does it mean when the district court said, I do think that those sums, the media tile amount and any value that DD&I has, are more appropriately placed and legally placed in the restitution column? Well, Your Honor, that statement is a statement about what the future value the defendant, the victims, might be able to realize from GLR. The district court quite appropriately was looking at the value that the victims had at the time of sentencing, regardless of what they might be able to achieve or to recoup later on. In fact, the district court allowed a continuance in its order, denying the Geringer's request for an expert valuation of illiquid assets. The district court explicitly said to Geringer that he was allowed a continuance if a sale of DD&I was in the offing. But Geringer never took him up on that because, as we have seen in the course since the sentencing, that sale was never going to happen, and indeed, to my knowledge, has not happened, and certainly nothing in the record indicates that it has happened in the year plus since sentencing. So the district court did exactly what Mr. Jeltsin just advocated that it should have done, which was to allow time if the DD&I could actually be sold such that the victims could be given some compensation for their loss. But if it was valueless, why is it properly placed in the forfeiture column? Well, it could be a form of restitution if it could be sold after sentencing. At any time in the future, Geringer could ask for that amount to be credited against his restitution order. That's all that that means. It doesn't mean that it had any value at the time of sentencing. You mean it acquired value after sentencing that's only appropriate for restitution? Let me be clear. The district court did not give him credit for the value, any value of DD&I or the DLR fund in the restitution order. Nearly he was saying, as the government urged below, that if some money could be returned to victims through the sale of DD&I at some point in the future, that Geringer could ask for that money to be counted against his restitution order so that he would not have to earn separate money to then satisfy the restitution judgment, but that that money could be used to offset the restitution that he had been ordered to pay the victims. So, for example, if he had a lottery ticket and he'd say, well, I think this thing's going to hit, the district court judge could say, well, maybe it does, maybe it doesn't. We don't know that now. If it hits, then you can use it against your restitution at some later date. Exactly, Your Honor. I think that's a very apt analogy. And I think if you look at the analogy that was just argued to you of the Rolls-Royce, Geringer's counsel just said that he could take it down to the used car lot and get some money from it, or he could find a seller somewhere. But, in fact, that's exactly what the victims in this case have been unable to do. They haven't been able to just take their shares down to the used car lot and sell it, and they haven't been able to find a seller somewhere, despite years of trying and lots of money invested in doing so. So I think that that argument, that that Rolls-Royce analogy actually supports the government's position in this case and supports affirming the district court's loss calculation here. But the judge also indicated later on, from where Justice Sotomayor was speaking, which Judge Reinhart just read, later on indicated that that value is, in fact, why, in the court's opinion, the judge said, is that information legally relevant to, that that information was not legally relevant to the analysis and the sentencing structure. Why did he say that? If it was a factual determination, why did the judge say that the legal analysis is that we will not look at that value? Well, Your Honor, I would just point you back to the page before that at ER 106, where the district court previously found that the government had met its burden of proof for loss, and that the loss was more than $50 million. So clearly here, the district court had already made the factual determination that the loss was greater than $50 million. To the extent that there, that the district court was then speculating as to whether or not any value might be realized in the future, as with the lottery ticket analogy, from the funds, from the GLR investments, it did find that those, that was more appropriately placed and legally placed in the restitution column. Even if this Court was to find, however, that this was a legal determination, I would still urge the Court to affirm, because the district court's method of valuation here was a reasonable estimate of loss, given that the GLR fund could not be divested of by the victims at any time up until and including sentencing. So that was all that the district court was required to do, was to make a reasonable estimate of the loss, and clearly here the district court did so by looking at whether or not the victims were able to sell their shares in the GLR fund by the time of sentencing, at what they had contributed into the fund, and what they had received back by the time of sentencing. So again, I think that that meets this Court's requirements for the reason, making a reasonable estimate of loss. If the Court were required to explain all of this, I find this has no value because it's like a lottery ticket. It may not have any value at all. It may have value, or I think it doesn't have value, but if it turns out to have value, that's fine. And to consider, I mean, I don't know about Silicon Valley projects, when they have value, when they don't, whether it's something that could be valued from anywhere from zero to $20 million, but isn't the district court supposed to explain those facts and how he made the decision? I see I'm over my time, but I will. That's all right. And I think that the district court did here make an adequate record about how he was making the loss calculation here, talking, you know, using the government's and the probation office's method of loss calculation, adopting that, and finding that there was more than a $50 million loss in this case. If there are no further questions, I will ask the Court to affirm. Thank you. Judge Reinhart, I think you hit it on the head when you pointed out the district court's quote. What the district court did, the best explanation we have of what the district court did is that he found any value of the fund to be irrelevant as a matter of law. That's what the district court's judgment was. And we don't know exactly how he got there because he didn't allow Mr. Geringer to present testimony or evidence about what the value might be in the eyes of the venture capital community, the eyes of anybody who's involved in private equity. So he didn't know because he shut the door on it. So all we have is the district judge saying it doesn't matter. And the district judge was essentially, the rationale, the government's rationale is, well, if you don't get a cash-for-cash return before the offense is discovered, then it's all out the window, which is flatly at odds with the long list of what I'm calling the victim benefit rule cases, which this Court and the Second Circuit have decided, which say that if the victim gets something of benefit, you offset it. And you make a good-faith estimate. It might not be with surgical precision. What's the asset worth? Maybe that's hard. I don't know. But you make a good-faith estimate to figure out what it's worth, and then you don't give a – you don't enact some sort of factually impossible scenario where Mr. Geringer from prison is supposed to figure out that DD&I got sold and how much each investor got for it, and he's going to go report back to the district court. There's no mechanism in place for that. The district court didn't make an order. He didn't set out any way for that to actually happen. His order – his ruling in this case is essentially a factual impossibility. Mr. Geringer's – so it's not really a lottery ticket, Your Honor. It's just ignoring the fact that the investors were sitting on something of substantial value. And so – which I think is – the last point I'll make, then, is that companies can be valued. So it's not like a lottery ticket. Companies do it all the time. Company A wants to buy Company B. So Company A says, I think you're worth X. I'll offer you X. Will you take it? That happens all the time. Companies get valued. So that's what was missing in this case, and I think the court should send it back so the district court can do it. Thank you. I see I'm out of my time. Thank you. The case against Geringer will be submitted.
judges: Reinhardt, Owens, Mendoza